Mr. Justice SWAYNE,
dissenting:
Finding myself unable to concur in the conclusions at which a majority of my brethren have arrived, I will state briefly the grounds of my dissent. My remarks will be confined to the case of the Orient company. The same objections apply in both cases.
[His honor here quoted the language of the policy, and stated the principal facts already set forth in the statement of the case, and proceeded]:
When the ease was here, as reported in 23 Howard, 401, this court held that if the Mary W. were of a rate lower than A 2, “ unless the assured paid or secured the additional premium fixed by the underwriters, the contract of insurance did not become complete and binding.” The judgment of the court below was reversed and a venire de novo awarded. That adjudication is before us for our guidance, not for review. The reasoning of the court commands my assent. •
Upon the retrial of the case in the court below, the main question necessarily was, whether the Mary W. was or was not below the rate of A 2. This proposition involved the further inquiiy, By what standard the rate was to be determined? Was it by that of Rio de Janeiro whence she sailed? Was it by that of Baltimore, where the application for insurance was made? Was it by that of the city of New York* where the policy was issued ? Or was the question whether she was A 2, to be answered only by the register of the company ? and if that were silent, the consequence to follow, that she was not A 2 within the meaning of the contract? It was proved that the rules of rating at Rio and Baltimore were different from those of New York; that the standard at New York was the highest, and that a vessel might be rated A 2 at Rio and Baltimore, which would fall below that rate at New York. It was also proved that each of the marine companies of New York keeps constantly in its employment a salaried officer, whose business it is to examine *484 and rate vessels, and that the rates of the vessels thus examined by him, are reported to the company and entered upon a book kept for that purpose. Mr. Swan, of the house of Grinnell, Minturn & Co., of New York, a witness examined in behalf of the plaintiff, testified as follows: “ The business of rating is a special one. The companies all have inspectors to ascertain the rating of vessels. When a policy speaks of the rate of vessels,, it means the rate of the company and refers to that standard.” Other testimony to the same effect was given.
Upon the last trial the court instructed the jury that if they should find (1), “ That by the long absence of the said vessel from New York, she had, in the understanding and usage of underwriters in New York, no fixed rating on the registers of any of the insurance companies in that city in 1856, but would have been rated there not lower than A 2, owing to the thorough repairs, had she been there for examination, then the plaintiff is entitled to recover in this case . . (2), although the jury find that it was the general usage and understanding of underwriters and commercial men in New York, that the words in these open policies of insurance, ‘ not below A 2,’ refer to the rate of vessels on the register of the company making the insurance.”
For the present I pass by the second part of these instructions. A majority of my brethren hold both parts to be correct. Conceding the first to be so, then the testimony should have been confined to facts tending to show what the rate of the vessel would have been in New York, if she had been there for examination.
The plaintiff was permitted to prove that she was “A 2,” according to the rating of Rio and Baltimore. The defendants objected and excepted. I think this testimony was incompetent and irrelevant. It was wholly immaterial what the rate of the vessel was according to the rules of rating at any other port than New York. The testimony must have tended strongly to mislead the jury. Having found that the vessel was “ A 2” at Rio and Baltimore, according to the standard of those places, it was but one step further to the *485 conclusion, that she ought to have been and would have been ■ rated A 2 at New York.
There are no cases in which it is more important to the right administration of justice that the rules of law should be carefully applied in trials by jury, than in those of the class to which this case belongs. The admission of this testimony, in my judgment, was an error. If such a usage existed as the second part of the instruction supposed, it entered into the contract. In that case it enlightens the ambiguity and ascertains the meaning of terms “A 2” as used in the policy. “ It may also be laid down as clear law, that if a man deals in a particular market, he will be taken to act according to the custom of that market; and if he directs another to make a contract at a particular place, he will be presumed to intend that the contract shall be made according to the usage of that place.”* “ Witnesses conversant with the business, trade, or locality to which the document relates, are called to testify that according to the recognized practice and usage of such business, trade, or locality, certain expressions contained in the writing have in similar documents a particular conventional meaning.”† “ In resorting to evidence of usage for the meaning of particular words in a written instrument, no distinction exists between such words as are purely local or technical — that is, words which are not of universal use, but are familiarly known and employed, either in a particular district, or in a particular science, or by a particular class of persons, — and words which have two meanings, the one common and universal and the other technical or local. In either case, evidence of usage will be alike admissible to define and explain the technical, peculiar, or local meaning of the language employed. Though in the latter case, it will also be necessary to prove such additional circumstances as will raise a presumption that the parties intended to use the words, in what the logicians call the second intention, unless this fact can be inferred from reading the instrument itself.”‡
*486 The learned judge, instead of directing the jury to disregard the custom, should have instructed them that if established to their satisfaction, and especially if known to the assured, from his previous transactions with the company or otherwise, it determined the meaning of the terms A 2, and was fatal to the right of the plaintiff to recover.
The construction claimed by the underwriters involved no hardship to the defendant in error.' When the parties failed to agree as to the premium, he was at liberty to insure elsewhere. He refused to pay the premium demanded, yet insisted they were bound. The company had a right to guard against the alternative of submitting the rate of the vessel to the judgment of a jury; I think they intended to do so. In any view which I can take of the subject, there was error in the second part of the instructions. For these reasons, in my opinion, the judgment should be reversed, and the cause remanded for further proceedings.
I am requested to say that Mr. Justice DAVIS concurs in this opinion.

 1 Taylor on Evidence, 178, and authorities cited.

 2 Id., 984.

 2 Id., 984-5.